UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RAHUL-EBENEZER DANIELS,

    Plaintiff,

  v.

JOSEPH GRADY, KATHRYN KARAYANNIS, FREDERICK JOHN STEFFEN, JR., LISA NYULI, and DONALD KRAMER,

    Defendants.

No. 17 CV 6775

Judge Manish S. Shah

## MEMORANDUM OPINION AND ORDER

Plaintiff Rahul-Ebenezer Daniels filed this suit pro se alleging that the attorney, state-court judges, guardian ad litem, and sheriff involved in his state-court divorce proceedings violated state and federal civil and criminal laws, court rules, and rules of professional conduct, and also infringed on his constitutional rights by conspiring against him during the divorce proceedings. The defendants move to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons stated below, the motions are granted.

## I. Legal Standards

A Rule 12(b)(1) motion challenges the federal court's jurisdiction. On such a motion, the plaintiff bears the burden of proving that jurisdiction is proper and must allege facts sufficient to plausibly suggest that subject-matter jurisdiction exists. *Silha v. ACT, Inc.*, 807 F.3d 169, 173–74 (7th Cir. 2015). To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain factual allegations that

plausibly suggest a right to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). With a 12(b)(6) motion, a court may consider allegations in the complaint and documents attached to the complaint. *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). When analyzing a motion under either a Rule 12(b)(1) or 12(b)(6), a court must accept all factual allegations as true and draw all reasonable inferences in the plaintiff's favor, but need not accept legal conclusions or conclusory allegations. *Iqbal*, 556 U.S. at 678–79; *Silha*, 807 F.3d at 174.

## II.  Background

Daniels's wife, Tanuja Daniels, filed for divorce in the Circuit Court of the Sixteenth Judicial Circuit on May 6, 2015. [4-4] ¶ 1.[1] Tanuja hired attorney Frederick John Steffen to represent her in the divorce proceedings. *Id.* ¶ 3. Daniels hired his own attorney. *Id.* ¶ 6. During the proceedings, Daniels noticed that there was no attorney certification on his wife's dissolution of marriage petition, which he understood to be a violation of Illinois Supreme Court Rule 137. *Id.* ¶ 8. He also realized there was no affidavit of service in the summons he had received. *Id.* ¶ 10. Judge Kathryn Karayannis was the presiding judge at this time. *Id.* ¶ 11. In late 2015 or 2016, Daniels began to notice inconsistencies in Steffen's signatures on various court documents. *Id.* ¶ 14. Believing these violations demonstrated a lack of respect for due process, Daniels required his attorney to withdraw during open

---

[1] Bracketed numbers refer to entries on the district court docket. The factual allegations forming the basis of Daniels's complaint are laid out in an affidavit attached to his complaint, [4-4].

2

court. *Id.* ¶ 15. Judge Joseph Grady (now presiding over the divorce case) granted that request, and Daniels filed an entry of appearance the same day. *Id.* ¶¶ 16–17.

In March 2016, Daniels filed a counterclaim raising the issue of Steffen's signatures and the Rule 137 violation. *Id.* ¶¶ 19–20. A month later, Daniels showed Judge Grady the inconsistent signatures, but Judge Grady accepted Steffen's in-court acknowledgment that the signatures were his and entered an order denying Daniels's objections to the legibility of the signatures (although Daniels complained about their inconsistency, not legibility). *Id.* ¶¶ 21–25. Daniels then hired an expert forensic document examiner to review Steffen's signatures, and the examiner issued a report stating he had found evidence strongly suggesting that the signatures were fraudulent. *Id.* ¶¶ 26–27. In June, Daniels's mother received a subpoena. *Id.* ¶ 29. Daniels brought the expert examiner's findings to Judge Grady's attention and argued that the subpoena issued to his mother had been fraudulent. *Id.* ¶ 31.[2] He also accused Steffen of violating his notary oath and committing perjury. *Id.* ¶ 32. Judge Grady said, "Mr. Daniels, it's only a signature," and denied all of Daniels's motions. *Id.* ¶¶ 33–34. Daniels next filed a motion to hold Steffen in contempt of court for issuing a fraudulent subpoena and then accused him of violating the Illinois Notary Public Act in a 2011 (apparently unrelated) marriage settlement agreement. *Id.* ¶¶ 35–36. Judge Grady acknowledged Daniels's claim about Steffen's criminal violations, but stated that the court did not have jurisdiction over the

---

[2] Daniels repeatedly asserts that the defendants acted fraudulently. *See, e.g.,* [4-4] ¶ 56. These are legal conclusions which need not be accepted as true. Instead, I consider the facts that Daniels alleges which could support an inference that the defendants acted fraudulently.

3

matter. *Id*. ¶ 37. At this point, Daniels came to believe that Judge Grady was colluding with Steffen. *Id*. ¶ 40.

Daniels submitted a FOIA request to the court clerk seeking access to Steffen's case files. *Id*. ¶ 43. After reviewing those files, Daniels reported his findings to the Illinois Attorney General, the State's Attorney, and the Illinois Secretary of State, alleging that Steffen had repeatedly violated the Illinois Notary Public Act. *Id*. ¶¶ 47–50. Following the advice of the State's Attorney's Office, Daniels then filed a complaint with the Chief of Police of the Village of South Elgin, who did nothing in response. *Id*. ¶¶ 52–53.

The petition for divorce that Steffen drafted on behalf of Tanuja Daniels cited irreconcilable differences or mental cruelty as reasons for the divorce. *Id*. ¶ 57.[3] On Steffen's advice, Tanuja also began working with a guardian ad litem, Lisa Nyuli, and took the couple's children for an interview with Nyuli without telling Daniels. *Id*. ¶¶ 74–75. Nyuli and Tanuja prepared a petition to have Daniels evicted from his home. *Id*. ¶ 77.[4] Tanuja, Nyuli, and Steffen met before the eviction hearing in June 2016, and along with Judge Grady, ganged up on Daniels and his parents during the hearing, treating them as though they had committed a crime. *Id*. ¶ 78. Judge Grady issued an eviction order removing Daniels and his parents from their home

---

[3] Daniels suggests that citing irreconcilable difference *or* mental cruelty as justifications for the divorce, instead of choosing one or the other, evidences fraud. I disagree—pleading alternative grounds for relief is a typical approach in a lawsuit, and it provides no basis to suspect anything nefarious.

[4] Daniels claims the petition contained false allegations based on the fact that the allegations used verbs such as "tells" and "allows." *Id*. ¶ 77. Using these verbs is not evidence of falsity.

4

and giving them four days to comply. *Id*. ¶ 80. Daniels objected to the order, asserting that it was based on false allegations, interfered with his freedom to exercise his religious beliefs, and required a full hearing. *Id*. ¶ 81. Judge Grady interrupted Daniels, but Daniels continued to voice his objections. *Id*. ¶ 82. Judge Grady, Steffen, and Nyuli all failed to consider Daniels's parents role in taking care of the children. *Id*. ¶ 86. Just before issuing the order, Judge Grady turned to Steffen and said, "Mr. Steffen, shall we cut him some slack?" and then told Daniels to "be glad that I did not issue the Order to have you out within 24 hours." *Id*. ¶ 80. Daniels filed a motion to reconsider the eviction order, arguing that it would cause undue hardship on his elderly parents. *Id*. ¶ 89. Daniels gave a copy of the motion to the Sheriff's office asking that it halt the forced removal. *Id*. ¶ 90.

After Judge Grady refused to rescind the eviction order, Daniels filed a motion to stop the divorce case pending an administrative determination regarding his claims of fraud. *Id*. ¶¶ 93–94. Citing a policy of only accepting one motion per case, the sheriff's office refused to accept this motion. *Id*. ¶ 95. So instead, Daniels sent a letter to the sheriff informing him of these events. *Id*. ¶ 96. Despite his knowledge of these events, Sheriff Kramer sent an officer to Daniels's home to ensure that he and his parents were not there. *Id*. ¶ 98. Had they been there, officers would have forcibly removed them. *Id*. The officer later called Daniels and told him that he had never seen such an extreme measure taken before a case had been fully adjudicated. *Id*. ¶ 101.

Daniels filed an administrative claim to alert administrative agencies to the violations of law he had observed. *Id.* ¶ 106. Daniels informed Judge Grady and Steffen of his administrative complaint, but neither recused himself from the divorce proceedings. *Id.* ¶¶ 109, 112, 114. The Secretary of State investigated Steffen's notarial violations. *Id.* ¶ 108. In February 2017, Daniels filed a motion to show cause in his divorce proceedings, followed by a notice to vacate and hold plaintiff in default when an answer was not returned in a timely manner. *Id.* ¶¶ 115–116. Judge Grady denied both. *Id.* ¶ 117. The court prevented Daniels from seeing his children from April through July 2017 and compelled him to get a mental evaluation. *Id.* ¶ 122.

### III. Analysis

Unhappy with many aspects of his state-court divorce proceedings, Daniels filed this lawsuit against his wife's attorney (Steffen), the guardian ad litem (Nyuli), the two judges who presided over the proceeding (Judges Karayannis and Grady), and the sheriff (Kramer). The defendants filed motions to dismiss for lack of subject-matter jurisdiction and for failure to state a claim. Defendants Steffen, Nyuli, Judge Karayannis, and Judge Grady assert immunity from suit. Steffen argues that to the extent there is subject-matter jurisdiction over any of the claims, *Younger* abstention is appropriate to avoid interfering with the ongoing state-court proceedings.

Daniels invokes numerous legal principles, statutes, and constitutional provisions. His complaint is at times difficult to follow and uses legal labels and

6

conclusions that are not informative. The factual allegations against each defendant, however, are clear. And because Daniels is pro se, I read his complaint liberally. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). For relief, Daniels asks for money damages, disciplinary action for the defendants' official misconduct, felony and fraud charges against Steffen, the return of his children and home, and the restoration of honor to the judicial and legal profession.

A. *Rooker-Feldman*

Federal district courts do not have jurisdiction to review the decisions of state courts in civil cases. The only federal court that does is the United States Supreme Court. 28 U.S.C. § 1257; *Kelley v. Med-1 Sols., LLC*, 548 F.3d 600, 603 (7th Cir. 2008). To prevent federal district courts from acting outside of the scope of their jurisdiction, the *Rooker-Feldman* doctrine prohibits them from deciding cases where "the losing party in state court filed suit in federal court *after* the state proceedings ended." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005) (emphasis added). *Rooker-Feldman* does not affect a district court's jurisdiction when the state-court action is ongoing. *See Anderson v. Anderson*, 554 Fed. App'x 529, 530–31 (7th Cir. 2014) (unpublished and nonprecedential). Because the state-court proceedings were ongoing at the time this suit was filed, *Rooker-Feldman* does not bar Daniels's claims.

*Rooker-Feldman* also does not bar claims alleging that the defendants "so far succeeded in corrupting the state judicial process as to obtain a favorable judgment." *Loubser v. Thacker*, 440 F.3d 439, 441–42 (7th Cir. 2006) (quoting

7

*Nesses v. Shepard*, 68 F.3d 1003, 1005 (7th Cir. 1995)). Because Daniels alleges that the state-court judges participated in fraud and corruption, and that this fraud caused them to rule against him, *Rooker-Feldman* would not bar Daniels's claims even if the state suit were final.

### B. Domestic Relations Exception

Though *Rooker-Feldman* does not apply, this court does not have jurisdiction to hear all of Daniels's claims. The domestic-relations exception to federal jurisdiction bars federal courts from issuing or modifying decrees in divorce cases. *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992); *see also Anderson*, 554 Fed. App'x at 530. To the extent Daniels's request that his children and home be restored to him asks this court for an award of child custody or to modify his divorce decree, his allegations run into this exception to federal-court jurisdiction. *See Friedlander v. Frielander*, 149 F.3d 739, 740 (7th Cir. 1998); *Anderson*, 554 Fed. App'x at 530.

### C. Criminal and Professional Misconduct

As part of the relief he seeks, Daniels asks for criminal prosecution for the defendants' professional misconduct and for Steffen to be charged for the felonies and fraud he has committed. As a private citizen, however, Daniels lacks standing to demand the criminal prosecution of another person. *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). Daniels mistakenly reads a letter from the Administrative Office of the U.S. Courts as granting him standing to pursue these claims. The letter provides, "if you are dissatisfied with this agency's disposition of your claim, you have the right to file suit in an appropriate United States district court within

six months of the date of mailing of this notification." [4-3]. That Daniels could challenge the Administrative Office's determination is not the same as granting him the authority to bring criminal claims against the defendants. And even if the letter meant what Daniels argues it does, Article III standing is a constitutional principle and not a requirement that can be waived. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Daniels also cannot base his claims on professional conduct or Illinois court rule violations that may have taken place during the state court proceedings. *See* ILCS S. Ct. Rules of Prof. Conduct, Preamble, ¶ 20; *Johnson v. Johnson & Bell, Ltd.*, 2014 Ill. App. (1st) 122677 at ¶ 19 (2014).

### D.   Remaining Allegations

To recap, Daniels cannot challenge the divorce decree or award of child custody entered by the state court, nor can he use this lawsuit to initiate criminal charges or bring claims based on violations of state-court rules or rules of professional conduct. But Daniels also alleges § 1983 violations, including a conspiracy to deprive him of his constitutional rights, and violations of the Illinois Notary Public Act.

#### *1.   Defendants Karayannis and Grady*

Daniels alleges that Judge Karayannis overlooked irregularities in the paperwork Steffen filed and that Judge Grady refused to act on information revealing Steffen's misconduct and entered an eviction order without letting Daniels fully object. This conduct, Daniels argues, violated his equal protection and due process rights. But claims against Judge Karayannis and Judge Grady are barred

9

by absolute judicial immunity. A judge is immune from liability—even if the action taken was done in error, maliciously, or in the excess of authority—unless she acts in the clear absence of jurisdiction. *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978). Daniels argues that the defendants never proved that the state court had jurisdiction over the divorce proceedings, but Illinois Circuit Courts have original jurisdiction of all justiciable matters. Ill. Const. art. 6 § 9. As such, it is not the case that Judges Karayannis and Grady acted in the clear absence of jurisdiction. Because all of the acts Daniels complains of occurred while Judge Karayannis and Judge Grady were acting in the scope of their judicial capacity, they enjoy absolute immunity. *See Brokaw v. Mercer Cty.*, 235 F.3d 1000, 1015 (7th Cir. 2000).[5]

    2.    *Defendant Nyuli*

Daniels alleges that Nyuli worked with his wife, Steffen, and Judge Grady to gang up on Daniels during the divorce proceedings. He also asserts that Nyuli failed to take into account his parents' role in the children's lives and wrongly concluded that Daniels was unfit to have custody of his children. Daniels's claims against Nyuli are barred because of her absolute immunity. Individuals asked to advise the court on the best interests of a child need "to be able to fulfill their obligations without the worry of intimidation and harassment from dissatisfied parents." *Cooney v. Rossiter*, 583 F.3d 967, 970 (7th Cir. 2009) (internal quotations omitted).

---

[5] A complaint should not be dismissed based on an affirmative defense, like immunity, unless the defense is apparent from the face of the complaint. *See Parungao v. Comm. Health Sys., Inc.*, 858 F.3d 452, 457 (7th Cir. 2017). Here, the detailed allegations of Daniels's affidavit and complaint establish that his claims against the judges and the guardian ad litem are based entirely on conduct for which they are immune from liability, making dismissal appropriate.

As a result, guardians ad litem are entitled to absolute immunity when they act at the court's direction. *Id*. That a guardian ad litem lied or misrepresented facts does not defeat absolute immunity, as long as the conduct complained of occurred while she was acting within the scope of her role as a child representative. *Golden v. Helen Sigman & Assoc., Ltd.*, 611 F.3d 356, 361 (7th Cir. 2010). Because all of Nyuli's conduct occurred within the course of her court-appointed duties, Nyuli is absolutely immune from Daniels's allegations.

### 3. Defendant Kramer

Daniels alleges that, despite being on notice that the eviction order was deficient, Kramer sent an officer to Daniels's home to enforce that order and ensure Daniels was not there. Had Daniels been present, he alleges, the officer would have forcibly removed him. Daniels further asserts that the sheriff's office's policy to accept only one motion to reconsider is a violation of due process. Daniels does not address whether he is suing Kramer in his individual or official capacity. This distinction is important because it "determines both the source and the nature of [any] damages award." *Hill v. Shelander*, 924 F.2d 1370, 1372 (7th Cir. 1991). Based on the allegations in the complaint, it appears Daniels sues Kramer in his official capacity. The complaint includes Kramer's title as sheriff in the heading and uses the terms "the sheriff" and "the sheriff's office," as opposed to referring to Kramer by name, which indicates intent to sue in the defendant's official capacity. *See id*. at 1373; *Kolar v. Sangamon Cty. of Ill.*, 756 F.2d 564, 568 (7th Cir. 1985). And when a complaint does not expressly state whether a defendant is sued in his

11

official or individual capacity but "alleges that the conduct of a public official acting under color of state law gives rise to liability under Section 1983, we will ordinarily assume that he has been sued in his official capacity and only in that capacity." *Kolar*, 756 F.2d at 568. Because Daniels uses Kramer's title and because he alleges that Kramer acted pursuant to a state policy not to accept his motion to reconsider, I assume he sues Kramer in his official capacity.

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. An action against a government official in his official capacity is essentially a claim against the government entity. *Ford Motor Co. v. Dept. of Treasury*, 323 U.S. 459, 463–464 (1945) (overruled on other grounds by *Lapides v. Bd. of Regents of Univ. Sys. of Geo.*, 535 U.S. 613 (2002)). A municipality is a person for § 1983 purposes and so can be liable for depriving someone of his constitutional rights. *Monell v. Dept. of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978). A state, however, is not, and so cannot be sued under § 1983. *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 64 (1989). The Eleventh Amendment also prevents § 1983 suits against a state. *See id.* at 65. When enforcing the state-court eviction order Kramer was a state actor, and Daniels

cannot allege a § 1983 claim for that action. *See Scott v. O'Grady*, 975 F.2d 366, 372 (7th Cir. 1992).

To the extent the complaint can be read to assert claims against Kramer in his capacity as a county official for damages (and not an alteration of the divorce decree, which avoids the domestic relations exception), Daniels has failed to state a claim against Kramer. To hold a municipal actor liable in his official capacity under § 1983 a plaintiff must show that the defendant acting under color of some official policy caused a violation of the plaintiff's constitutional rights. *Monell*, 436 U.S. at 692. Though he asserts that Kramer acted pursuant to a policy of accepting only one motion per case, Daniels has failed to allege facts showing that this policy violated his constitutional rights. As any litigant is entitled to do, Daniels disputes the outcome of the state court's eviction order. But he alleges no facts to support an inference that the lack of ability to challenge that decision *with the sheriff* violated his due process rights. And Daniels's allegation that the sheriff would have forcibly removed him from his home had he been present is too speculative to support a claim.[6]

### 4. *Defendant Steffen*

Daniels alleges that Steffen made written and oral misrepresentations throughout his representation of Tanuja Daniels, violating state and federal law

---

[6] Reading the complaint to be an individual-capacity claim against Kramer would not help Daniels. Such a claim must allege that the defendant "caused or participated in a constitutional deprivation." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996). Even if Kramer personally sent an officer to enforce the order or refused to accept Daniels's motion to reconsider, neither of these acts amounts to a constitutional deprivation, and so Daniels has also failed to state a § 1983 claim against Kramer as an individual.

13

and Daniels's constitutional rights. Daniels's § 1983 claims against Steffen fail because Steffen is not a government actor. Though all attorneys are "officers of the court," merely representing a client in court is not acting "under the color of state law" as required for § 1983 liability. *See Polk Cty. v. Dodson*, 454 U.S. 312, 318 (1981). A private actor who conspires with a government official, however, even a government official who is immune, acts under the color of state law and may be liable. *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980).

But here, Daniels has not alleged facts to support his contention that any of the government actors were part of a scheme to deprive him of his rights. A bare allegation of conspiracy is not enough to withstand a motion to dismiss. *See Cooney*, 583 F.3d at 971. None of the facts Daniels alleges suggest that Steffen conspired with a state actor to deprive Daniels of his rights. That Steffen met with Nyuli does not support an inference that the two conspired against Daniels. Daniels's contention that Nyuli, Steffen, and Judge Grady then ganged up on him during the eviction hearing is conclusory and similarly does not support an allegation of conspiracy. As for the judges' conduct, a refusal to enter an order to address an attorney's fraudulent conduct is insufficient to infer that the judge must have been acting in concert with the attorney. *See Anderson*, 554 Fed. App'x at 531. The comment Judge Grady made to Steffen about cutting Daniels some slack by giving him four days to comply with the eviction order perhaps failed to reflect the seriousness of the matter to Daniels and his parents, but it does not show that

Judge Grady conspired with Steffen to purposefully deprive Daniels of his rights. As such, there is no government action to support a § 1983 claim against Steffen.[7]

Daniels also alleges that Steffen violated the Illinois Notary Public Act. But because all of his federal claims have been dismissed, I relinquish my jurisdiction over these remaining state-law claims.[8] *See* 28 U.S.C. § 1367(c)(3); *Al's Serv. Ctr. v. BP Prods. N. America, Inc.*, 599 F.3d 720, 727 (7th Cir. 2010) ("When all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims.").

### E. *Younger* abstention

The *Younger* abstention doctrine requires federal courts to abstain from interfering with ongoing state court proceedings. *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432, 437 (1982); *Green v. Benden*, 281 F.3d 661, 666 (7th Cir. 2002). Only Steffen asked this court to abstain pursuant to *Younger*. Because there is no jurisdiction to address many of the claims in the

---

[7] Steffen also argues that he is immune from Daniels's claims, relying on the Illinois litigation privilege, which affords attorneys immunity from liability arising out of statements or conduct made in connection with litigation. *See O'Callaghan v. Satherlie*, 2015 Ill. App. (1st) 142152 ¶ 27 (2015). However, a "state absolute litigation privilege purporting to confer immunity from suit cannot defeat a federal cause of action." *Steffes v. Stepan Co.*, 144 F.3d 1070, 1074 (7th Cir. 1998). And though federal courts often look to state law to define the contours of federal litigation privilege, because Daniels's federal claims against Steffen are dismissed on other grounds, I decline to do so in this case.

[8] Despite Daniels's contention to the contrary, there is no diversity jurisdiction over his claims. An individual is a citizen of the state where he is domiciled (defined as the state that he considers to be his permanent home). *Galva Foundry Co. v. Heiden*, 924 F.2d 729, 730 (7th Cir. 1991). Though Daniels lists Steffen as a citizen of Washington D.C. per the Fourteenth Amendment, or of the U.N. per the International Organizations Immunities Act of 1945, the address provided and the facts asserted in the complaint indicate that Steffen is actually a citizen of Illinois.

complaint, there is no need to decide whether abstention (which is not a jurisdictional bar, *see Kendall-Jackson Winery, Ltd. v. Branson*, 212 F.3d 995, 997 (7th Cir. 2000)) is also appropriate. As for the remaining claims, *Younger* abstention would not apply to all of them. For example, deciding a damages claim against Steffen would not disrupt the state-court proceedings, and so abstention would be unnecessary. But because it is clear from the complaint that Daniels has failed to state a claim, I decline to exercise *Younger* abstention.

## IV. Conclusion

Defendants' motions to dismiss [22], [38], [40], and [43] are granted. Plaintiff's complaint is dismissed without prejudice in part (for lack of jurisdiction and with respect to relinquished state-law claims) and with prejudice in part (for failure to state a claim). Enter judgment and terminate civil case.[9]

ENTER:

/s/ Manish S. Shah

Manish S. Shah
United States District Judge

Date: April 2, 2018

---

[9] Daniels understandably seeks recourse in the federal courts, but his complaint is really a matter of state law. The state authorities are the proper officials to hear Daniels's arguments, and although they have not been receptive to his complaints, that does not mean the federal courts can hear this dispute. Amendment of this lawsuit would be futile because Daniels cannot bring federal claims against these defendants arising out their connection to his divorce case.